IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

JAMES BURDICK, in his capacity as )
surviving parent of decedent Jake Burdick, )
 )
Plaintiff, )
 )    Case No: 1:26-cv-2132
v. )
 )
TANDEM DIABETES CARE, INC. )
 )
Defendant. )

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff James Burdick, by and through his attorneys of record, and for his cause of action against Defendant Tandem Diabetes Care, Inc. (Tandem), states and alleges the following:

## PARTIES

1. Plaintiff James Burdick is a citizen and resident of Elbert County, Colorado. He is the surviving parent of Jake Burdick.

2. Jake Burdick, 18 years old, died on or about May 18, 2024, from a hyperglycemic episode.

3. Plaintiff brings a wrongful death action pursuant to § 13-21-202, C.R.S. as the surviving father of and on behalf of all heirs-at-law of Jake Burdick.

4. Defendant Tandem Diabetes Care, Inc. is an active, in good standing, foreign (Delaware) for-profit corporation that is registered to do business in Colorado with registered agent Corporation Service Company, 1900 W Littleton Blvd., Littleton, CO 80120, with its principal place of business at 12400 High Bluff Dr., San Diego, CA 92130. Defendant Tandem was and is

engaged in the business of manufacturing, marketing, testing, labeling, promoting, and/or distributing the t:slim X2 Insulin Pump.

5.     Tandem, at all times relevant, regularly transacted business in the State of Colorado, including but not limited to the promotion, sale, and marketing of its t:slim devices, and availed itself of the laws and privileges of the State of Colorado by way of providing medical devices and related services within the State of Colorado.

## JURISDICTION

6.     The acts giving rise to Plaintiff's causes of action occurred in Elbert County, Colorado.

7.     The United States District Court for the District of Colorado has original jurisdiction of this civil action between citizens of different States with the matter in controversy exceeding the sum of $75,000.00 pursuant to 28 U.S.C.A. § 1332.

8.     The United States District Court for the District of Colorado has personal jurisdiction over Tandem based on its registration to do business in Colorado, its regular transaction of business in Colorado, its marketing, advertising and sale of medical devices to Colorado residents, and its commission of tortious acts within Colorado and this civil action specifically arises out of Tandem's transaction of business in Colorado.  Tandem can be served by serving its registered agent, Corporation Service Company, 1900 W Littleton Blvd., Littleton, CO 80120.

## FACTUAL ALLEGATIONS

9.     Jake was diagnosed as a type 1 diabetic when he was 14 months old.

10.    On December 13, 2019, when Jake was 13 years old, the FDA approved Tandem's t:slim X2 insulin pump with Control-IQ technology as a Class II medical device subject to subject to special controls listed in 21 CFR 862.1355.

11.    The t:slim X2 insulin pump is a device intended to provide subcutaneous delivery of insulin at set and variable rates in persons requiring insulin.

12.    Control-IQ technology is the automated insulin-delivery software that has been built into the t:slim X2 that automatically adjusts insulin delivery when integrated with a compatible continuous glucose monitor.

13.    The Dexcom G6 System is a CGM compatible with the Tandem t:slim X2 insulin pump with Control-IQ technology.

14.    The t:slim X2 with Control-IQ and Dexcom G6, when integrated together, creates an automated insulin delivery system (AID) that can automatically increase, decrease, and suspend delivery of basal insulin based on sensor readings and predicted glucose values. It can also deliver correction boluses when the glucose value is predicted to exceed a predefined threshold.

15.    If any one of the Tandem's t:slim X2 insulin pump component parts and/or the proprietary software algorithm is defective or does not operate as patients and their family members expect given the information provided to them by Tandem and their healthcare providers, its diabetic user may overdose or underdose insulin rendering the benefit of such a device not worth risk of using.

16.    On December 14, 2023, Jake turned 18 years old. He lived with Plaintiff in Elizabeth, Elbert County, Colorado. His senior football season had ended but Jake stayed busy as the first chair violinist in the high school orchestra and with training for his upcoming track and field season.

17.    At all times relevant, Jake used a t:slim X2 insulin pump with Control-IQ integrated with the Dexcom G6 to monitor and control his type 1 diabetes.

18.    At all times relevant, Jake kept the software associated with his t:slim X2 insulin pump with Control-IQ current, including the t:connect app on his iPhone.

19.    On February 12, 2024, Tandem released version 2.7 of the t:connect mobile app used in conjunction with t:slim X2 insulin pump with Control-IQ technology.

20.    On March 26, 2024, Tandem issued an Urgent Medical Device Correction of version 2.7 of its Apple iOS t:connect app, as a software error caused the pump to shut down sooner than would be expected during normal use of the app.

21.    A pump shutdown suspends insulin delivery, which leads to an under-delivery of insulin and may result in hyperglycemia, diabetic ketoacidosis, and/or death.

22.    Tandem was aware that its pump could shut down overnight unless the battery was at full or near full charge when the user went to sleep.

23.    Tandem released version 2.7.1 of the Apple iOS t:connect app at the same time it issued the Urgent Medical Device Correction.

**JAKE'S DEATH**

24.    Friday, May 17, 2024, was a normal day for Jake. He had a full day at school, and eager to graduate next week on Saturday, May 25, 2024, from high school with honors. Jake planned to attend Denver University in the fall and had recently been awarded academic scholarships.

25.    That evening, Jake said goodnight to Plaintiff and then went to his bedroom.

26.    Sometime during the night Jake had a hyperglycemic episode.

27. The t:slim X2 with Control-IQ technology did not dispense insulin to Jake to prevent this hyperglycemic episode.

28. The hyperglycemic episode led to a cerebral edema, and ultimately Jake's death.

29. At approximately 8:00 a.m. on Saturday, May 18, 2024, Plaintiff found Jake face down on the floor of his bedroom, unresponsive.

30. Plaintiff called emergency medical services and then tried to resuscitate Jake, but it was too late.

31. EMS pronounced Jake deceased at 8:17 a.m.

### AFTER JAKE'S DEATH

32. On August 9, 2024, Tandem admitted in a customer notification that during normal use of version 2.7.1 of the Apple iOS t:connect app of the app caused rapid depletion of a user's t:slim X2 insulin pump battery, causing the pump to shut down unexpectedly.

33. On July 1, 2025, Tandem initiated a Class 1 device recall of the t:slim X2 insulin pump due to a speaker malfunction that "prevent[ed] audible alerts and cause[d] the pump to become inoperable and stop infusing insulin which could result in a hyperglycemic event." Recall No. Z-2343-2025.

34. Jake's insulin pump was within the affected population of the July 2025 recall.

### CLAIMS FOR RELIEF

35. At all times relevant, Tandem designed, manufactured, marketed, and sold the t:slim X2 insulin pump with Control-IQ technology to reliably and timely dispense insulin to users.

36. At all times relevant, Tandem designed, manufactured, marketed, and sold the t:slim X2 insulin pump with Control-IQ technology so users could automate their insulin intake when it was integrated with a CGM like the G6.

37.     At all times relevant, Tandem designed, manufactured, marketed, and sold the t:slim X2 insulin pump with Control-IQ technology to rely on the readings of a CGM like the G6 when automatically dispensing insulin.

38.     Tandem's actions alleged herein violate:

a.     Colorado's Consumer Protection Act (§ 6-1-101 et seq., C.R.S.);

b.     The Federal Food, Drug, and Cosmetic Act ("FDCA") (See, e.g., 21 U.S.C. §§ 331, 351, 352, 360, 360d, 360j; 21 C.F.R. §§ 807.81, 820.1 et seq.);

c.     Colorado's Product Liability Act (§§ 13-21-401 to -406, C.R.S.); and

d.     Colorado's Common Law Negligence.

39.     Tandem's obligations under the aforementioned Colorado law do not create additional requirements than those mandated by the FDCA.

40.     The Colorado law claims stated herein run parallel but are distinct from Tandem's requirements under the FDCA.

41.     Tandem's t:connect app and/or pump failed to perform as federally cleared/authorized and as required by federal device controls, causing pump shutdown and insulin suspension, and that same conduct violated Colorado's independent duty not to place an unreasonably dangerous product into the stream of commerce.

## COUNT I – COMMON LAW NEGLIGENCE

42.     At all times relevant, Tandem owed a reasonable duty of care to consumers in designing, manufacturing, and marketing the t:slim X2 insulin pump with Control-IQ technology.

43.     At all times relevant, Tandem had a duty to exercise reasonable care to prevent the t:slim X2 insulin pump with Control-IQ technology from creating an unreasonable risk of harm to

the person reasonably expected to use it while it was used in the manner Tandem might have reasonably expected.

44.    Tandem breached its duties and failed to use reasonable care as it:

a.  Failed to conduct adequate hazard analysis in design, manufacture, and use of the t:slim X2 with Control-IQ;

b.  Failed to conduct adequate hazard analysis in design, manufacture, and use of the t:slim X2 with Control-IQ when integrated with a CGM, including reasonably foreseeable CGM accuracy errors;

c.  Failed to investigate complaints submitted to the FDA regarding the safety and reliability of the t:slim X2 with Control-IQ technology battery;

d.  Failed to investigate complaints regarding the safety and reliability of the t:connect app;

e.  Failed to investigate complaints regarding the safety and reliability of the t:slim X2 speakers;

f.  Failed to investigate complaints submitted regarding the safety and reliability of the t:slim X2 with Control-IQ when integrated with the G6 system or other CGM;

g.  Failed to designed the speakers of the t:slim X2 insulin pump to conform in violation of its common law duty and federal safety requirements;

h.  Designed the t:connect 2.7 versions of the Apple iOS to cause unexpected pump shutdowns in violation of its common law duty and federal safety requirements;

  i. Designed the t:slim X2 insulin pump in such a way that the battery would fail when reasonably used in violation of its common law duty and federal safety requirements;

  j. In such other ways as may be proven by evidence.

45. Tandem's previously listed failures, individually and in combination, made the t:slim X2 with Control-IQ unreasonably dangerous when used as intended.

46. Jake Burdick was a type 1 diabetic who used the t:slim X2 with Control-IQ as Tandem intended.

47. As a direct and proximate cause of the negligence and carelessness of Tandem, Jake Burdick sustained an otherwise preventable injury leading to his death.

### COUNT II – COLORADO STRICT PRODUCTS LIABILITY

48. Tandem was engaged in the business of designing, manufacturing, marketing, and selling the t:slim X2 insulin pump with Control-IQ technology.

49. Tandem manufactured, marketed, and sold the t:slim X2 with Control-IQ without adequately analyzing or address hazards in its design, manufacture, and use of the t:slim X2 with Control-IQ.

50. Specifically, did not adequately analyze or address the following reasonably foreseeable hazards:

  a. The use of t:slim X2 with Control-IQ with an inaccurate CGM;

  b. Pump shutdown due to battery drainage caused by connectivity issues;

  c. Pump shutdown without warning;

  d. Pump shutdown while the user slept;

  e. Insulin suspension caused by non-critical errors;

   f. Insulin suspension without warning; and

   g. In such other ways as may be proven by evidence.

51. The t:slim X2 insulin pump with Control-IQ and t:connect app was defective at the time of Jake's death because they were unreasonably dangerous in that:

   a. The t:connect app caused unpredictable pump shutdowns that put users at risk of injury or death;

   b. The t:connect app created a risk of harm to users, including injury or death, that was not outweighed by the benefits of such;

   c. The speakers in the t:slim X2 insulin pump prevented audible alerts which could result in injury or death;

   d. The speakers in the t:slim X2 insulin pump caused the pump to no longer operate resulting in injury or death;

   e. The t:slim X2 insulin pump with Control-IQ stopped infusing insulin at times unexpected by the user that may result in injury or death of the user;

   f. The t:slim X2 insulin pump with Control-IQ created a risk of harm to users when integrated with the G6 System that may result in injury or death of the user;

   g. The t:slim X2 insulin pump would  die while the user slept unless at full charge or near full charge before the user went to sleep;

   h. The Control-IQ technology software created a risk of harm to users when integrated with the G6 System by inaccurately determining the amount of insulin the user needed that may result in injury or death of the user;

i. The t:slim X2 insulin pump with Control-IQ created a risk of harm to users that was not outweighed by the benefits of such that may result in injury or death of the user; and

j. Other such ways that might be proven by evidence.

52. Tandem knew or should have known through testing, adverse event reporting, software-validation or otherwise that the condition of its t:connect app or t:slim X2 insulin pump with Control-IQ created a risk of bodily injury and/or death.

53. The t:slim X2 insulin pump with Control-IQ Jake used on or about May 18, 2024, was defective in one or more of the ways described in paragraph 51 at the time it left Tandem's control.

54. Tandem expected the instant t:slim X2 insulin pump with Control-IQ to reach Jake without substantial change from when it left Tandem's control, and it did in fact reach Jake without substantial change.

55. The Control-IQ technology in the slim X2 insulin pump Jake used on or about May 18, 2024, was defective at the time it left Tandem's control in one or more of the ways described in paragraph 51.

56. Tandem expected it to reach Jake without substantial change from when it left Tandem's control, and it did in fact reach Jake without substantial change.

57. The version of the t:connect app Jake used on or about May 18, 2024, was defective at the time it left Tandem's control as described in paragraph 51.

58. Tandem expected it to reach Jake without substantial change from when it left Tandem's control, and it did in fact reach Jake without substantial change.

59.     The previously-listed defects, individually or in combination, caused Jake to sustain an otherwise preventable injury by failing to regulate his insulin intake as intended which led to his death.

### COUNT III – COLORADO'S CONSUMER PROTECTION ACT

60.     Tandem knowingly or recklessly made a false representation that the t:slim X2 insulin pump with Control-IQ was safe and reliable to control glucose levels in type 1 diabetics.

61.     Tandem knowingly or recklessly made a false representation that the t:slim X2 insulin pump with Control-IQ would accurately adjust insulin delivery when used as instructed.

62.     Tandem knowingly or recklessly made a false representation that the t:slim X2 insulin pump with Control-IQ accurately and reliably adjusts insulin delivery based on the user's needs when integrated with the G6.

63.     Tandem knowingly or recklessly made a false representation that the t:slim X2 insulin pump with Control-IQ would not unexpectedly turn off when used as instructed.

64.     Potential and actual consumers, like Plaintiff, would not have bought the t:slim X2 insulin pump with Control-IQ for their children or themselves had they known:

   a.   All or some components of the t:slim X2 insulin pump with Control-IQ or t:connect app were unsafe and unreliable;

   b.   The t:slim X2 insulin pump with Control-IQ would not accurately adjust insulin delivery when used as instructed; or

   c.   The slim X2 insulin pump with Control-IQ would not accurately and reliably adjust insulin delivery based on the user's needs when integrated with the G6;

   d.   The t:connect app caused unpredictable pump shutdowns;

e. The speakers in the t:slim X2 insulin pump prevented audible alerts;

f. The speakers in the t:slim X2 insulin pump caused the pump to no longer operate at unexpected times;

g. The t:slim X2 insulin pump with Control-IQ stopped infusing insulin at times unexpected by the user; and

h. Other such ways that might be proven by evidence.

65. Plaintiff and Jake relied on Tandem's representations. Jake would not have used t:slim X2 insulin pump with Control-IQ or the t:connect app if he had known those representations were false.

66. As a direct result of Tandem's conduct, Plaintiff and Jake paid for and/or used Tandem's devices and software.

67. The t:slim X2 insulin pump with Control-IQ and/or t:connect app caused Jake to sustain an otherwise preventable injury that led to his death as they were unsafe and unreliable; did not accurately adjust insulin delivery when used as instructed; did not accurately and reliably adjust insulin delivery based on the user's needs when integrated with the G6; and/or shut down at unexpected times.

## DAMAGES

68. As a direct result of Tandem's conduct, Jake died, and as a result, Plaintiff has suffered economic and non-economic damages.

69. Plaintiff contends the amount in controversy is more than $75,000.00.

70. Plaintiff has suffered and will continue to suffer non-economic loss, harm, and damage, including but not limited to mental anguish, suffering, and bereavement, loss of companionship, inconvenience, and emotional stress.

71.     Plaintiff has suffered and will continue to suffer economic loss, harm, and damage, including reasonable funeral, burial, internment, or cremation expenses, and any net financial loss which Plaintiff has had because of the death of Jake.

72.     Plaintiff seeks all relief to compensate him for his damages as allowed by law, including, but not limited to interest, treble damage, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff James Burdick as heir-at-law of Jake Burdick prays for judgment in his favor and against Tandem in an amount to compensate Plaintiff for all of his damages allowed by law, including past and future economic and non-economic damages; for costs; reasonable attorney fees, and for any other relief the Court deems just, equitable, and appropriate.

RESPECTFULLY SUBMITTED this 18th day of May 2026.

**SHAMBERG, JOHNSON & BERGMAN, CHARTERED.**

*/s/ M. Jane Rose*
Matt Birch
M. Jane Rose
2600 Grand Blvd., Suite 550
Kansas City, Missouri 64108
Phone: (816) 474-0004
Emails: mbirch@sjblaw.com
jrose@sjblaw.com,


**GERASH STEINER P.C.**
Daniel P. Gerash
Eric L. Steiner
C. Shelbi Danner
1775 Sherman St., Suite 1650
Denver, Colorado 80203
Phone: (303) 830-0630
Emails: dan@gsattorney.com
eric@gsattorney.com
shelbi@gsattorney.com,

and

**BLANTON LAW FIRM**
Michael W. Blanton
12841 Lake Port Street
Firestone, Colorado 80504
Phone: (970) 805-3116
Email: mblanton@mblantonlaw.com


*Counsel for Plaintiff*

## DEMAND FOR A JURY TRIAL AND DESIGNATION OF PLACE

COMES NOW Plaintiff hereby demands a trial by jury on all issues in the above-captioned case.  Plaintiff designates Denver, Colorado as the place of trial.

RESPECTFULLY SUBMITTED this 18th day of May 2026.

**SHAMBERG, JOHNSON & BERGMAN, CHARTERED.**

*/s/ M. Jane Rose*
Matt Birch
M. Jane Rose
2600 Grand Blvd., Suite 550
Kansas City, Missouri 64108
Phone: (816) 474-0004
Emails: mbirch@sjblaw.com
jrose@sjblaw.com,


**GERASH STEINER P.C.**
Daniel P. Gerash
Eric L. Steiner
C. Shelbi Danner
1775 Sherman St., Suite 1650
Denver, Colorado 80203
Phone: (303) 830-0630
Emails: dan@gsattorney.com
eric@gsattorney.com
shelbi@gsattorney.com,

and

**BLANTON LAW FIRM**
Michael W. Blanton
12841 Lake Port Street
Firestone, Colorado 80504
Phone: (970) 805-3116
Email: mblanton@mblantonlaw.com


*Counsel for Plaintiff*